[Civ. No. 265.   Third Appellate District.—February 26, 1907.]

## H. F. HOBSON, Respondent, v. PACIFIC STATES MER-CANTILE COMPANY, Appellant.

RECEIVER—EX PARTE APPOINTMENT—BASIS FOR DETERMINING VALIDITY—SUBSEQUENT PROCEEDINGS IMMATERIAL.—The validity of an *ex parte* order appointing a receiver must be determined by the proceedings upon which it was based; and, aside from any imperfection in the bond, any proceedings taken subsequently to the making of the order when a motion to vacate the order was noticed and heard, including an amended complaint then allowed to be filed, are wholly immaterial.

ID.—INSUFFICIENT COMPLAINT—OBJECT OF ACTION—APPOINTMENT OF RECEIVER OF INSOLVENT CORPORATION—WANT OF NOTICE.—Where the original complaint on which the order was based did not state a cause of action, and had for its object merely to appoint a receiver of a corporation, alleged on information and belief to be insolvent, and a receiver was appointed upon the verified complaint to take possession of all of the assets of the corporation without notice, the order has no validity and must be reversed.

ID.—APPOINTMENT MUST BE ANCILLARY TO PENDING CAUSE OF ACTION.—There is no such thing as an action brought merely for the appointment of a receiver. Such an appointment, when made, must be ancillary to a pending and independent cause of action, and its purpose is to preserve the property pending the litigation, so that the relief awarded by the judgment, if any, may be effective.

ID.—JURISDICTION OF EQUITY—INSOLVENT CORPORATION.—A court of equity has no inherent power to appoint a receiver of an insolvent corporation merely because of its insolvency, or to wind up its affairs, in the absence of a statute; and no statute authorizes a private person, either as stockholder or creditor, to maintain an action to dissolve a corporation upon the ground that it is insolvent, or to place its property in the hands of a receiver.

ID.—NOTICE REQUISITE AS A RULE—IRREPARABLE INJURY—TEMPORARY INJUNCTION.—As a general rule, the appointment of a receiver to take property out of one's possession without a trial will not be indulged in by a court without previous notice to the defendant. It would be unjustifiable, except where it clearly appeared that irreparable injury would be done during the few days necessary for a hearing on notice; and even in such extreme case a temporary injunction would usually be sufficient.

APPEAL from an order of the Superior Court of the City and County of San Francisco appointing-a receiver.   F. H. Kerrigan, Judge.

The facts are stated in the opinion of the court.

Riordan & Lande, for Appellant.

L. G. Carpenter, F. W. Sawyer, and H. F. Hobson, for Respondent.

CHIPMAN, P. J.—The prayer of the complaint is that plaintiff have judgment for $4,525, and that a receiver be appointed upon the filing of the complaint to take possession of all the assets and property, books, papers and records of defendant, and that defendant be restrained from transferring any of its property, assets, books and records and from doing any further business. Before the court made any order and as required by the court, plaintiff on said day filed a bond in the sum of $1,000, signed by plaintiff and one surety, though reciting the names of two sureties. It does not appear that this bond was approved. Thereupon and on the same day, and without notice to defendant, the court made the following order:

"From the verified complaint herein, good reasons appearing, and it appearing necessary and proper therefor it is hereby ordered that: Thomas J. Quinn be and he is hereby appointed Receiver herein to take into possession and safely keep until the further order of this court, all of the assets, property, money of whatever kind or nature, books, records, files and papers of the defendant herein, and until the further order of this court the defendant, its officers, managers and agents are restrained from disposing, transferring or removing any of its assets, property, books, files, records and accounts, and they and each of them and all other parties having property in their possession or under the control belonging to the defendant are hereby directed to deliver the same to said receiver.

"For the purpose of fully carrying out this order and the authority of the said Receiver, the said Receiver is hereby authorized to commence and institute any necessary action in any court for that purpose.

"The Receiver is hereby required to furnish on qualifying an undertaking in the sum of $3000.00 and to take the oath required by law.

"Dated July 23rd, 1904.

"FRANK H. KERRIGAN,

"Judge.

"(Endorsed): Filed Jul. 23, 1904."

On the same day the receiver so appointed filed the required bond, which was on that day approved by the said judge. The complaint was verified and was filed on July 22, 1904. It alleged that defendant is a corporation organized under the laws of this state; that its object was the sale and issuance of contracts known as "Merchandise Contracts," a sample of which is appended to the complaint as exhibit "A" and made part thereof; that plaintiff is the owner and holder of three hundred and seventy-four of said contracts, all of which are in good standing. This contract purports to be an agreement on the part of the corporation to deliver to the holder or his assigns, upon his complying with the conditions stated therein, "merchandise of whatever description desired to the retail value of one hundred dollars." The company guarantees, upon redemption of the contract, to find a purchaser for the merchandise, should the holder wish to sell the merchandise, "for the amount of $85 cash then and there." The holder is required and agrees to pay to the company the sum of $50, as follows: Five dollars on delivery of the contract, one dollar and fifty cents weekly for thirty successive weeks, failing in which the contract becomes void and all payments made are to be forfeited to the company. If the weekly payments are fully paid the contract is deemed fully paid and nonforfeitable, "and when thereafter there shall be the full sum of one hundred dollars to the credit of this contract in the Redemption Fund of the company, the company will immediately, on the surrender to it of this contract, deliver to the holder thereof the merchandise hereinbefore mentioned." The contract provides further that the company shall retain "for its own use and all expenses" the initial payment of five dollars; also twenty-five per cent of the thirty weekly installments; also "place ten per cent in the reserve fund, and set aside the remainder of the installments paid on this and other similar contracts to the credit of the Redemption Fund. The money in said

Redemption Fund shall be used in the purchase of merchandise for delivery, as required in the fulfillment of this and similar contracts of the company.'' It is also provided that the contract ''is written pursuant to a written application thereof signed by the holder which is hereby referred to and made part hereof,'' but this application is not set out nor are its provisions stated in the complaint.

The complaint next alleges: That ''said business of said defendant is against public policy and as plaintiff is informed and believes and therefore alleges a fraud against the plaintiff and all contract holders''; upon information and belief it is alleged that the postoffice department has instituted proceedings against defendant to deprive it of the use of the mails, and that defendant has been ''sued and attached on mature contracts and has been unable to meet its demands''; that defendant has caused two other corporations to be organized for the purpose of taking over its property ''and placing itself insolvent,'' and unless restrained will transfer its property to prevent the holders of said contracts from realizing anything thereon; that many of said contracts are outstanding and the holders thereof ''are becoming alarmed and are making great demands on defendant which are being refused''; plaintiff also alleges on information and belief that complaint has been made to the attorney general of the state requesting proceedings to be taken to revoke the license of defendant to do further business, and that before such action is taken defendant will dispose of all its assets and property in a manner to be of great loss to plaintiff and other contract holders; on information and belief also it is alleged that defendant is insolvent and cannot meet its obligations, and that ''plaintiff believes'' that defendant intends to sell as many contracts as it can and cause its insolvency to be circulated and thus discredit its ability to meet the demands upon it and cause holders to forfeit their contracts, and unless restrained and a receiver appointed to take charge of the business there will be a great many contracts declared void for nonpayment and the money paid thereon forfeited; that plaintiff has no information of the full indebtedness and liability of defendant, and that such information is contained in defendant's books and records, which, unless preserved by order of the court, will be destroyed or disposed of so as not

to be available as evidence; that there has been paid on plaintiff's said contracts the sum of $4,525, which defendant "has had and received for the use and benefit of plaintiff and said contracts"; that "unless a receiver is appointed to take possession of the assets and property of defendant and its books, papers, vouchers, records as herein alleged, they will be lost to the plaintiff and all contract holders."

The bond for $1,000 was objected to as being defectively executed (by whom and when objected to does not appear), and on July 28, 1904, by order of the court, a bond similar in all respects to the first one, duly executed by plaintiff and two sureties, was filed and approved by the judge in lieu of said first bond. It appears that on the day of his appointment, namely, July 23d, the receiver "entered into possession of the premises and offices occupied by the corporation defendant, and seized and took possession and control of all the assets and property of every kind and nature, books, papers, records, vouchers and all other property of every character pertaining to the business of said corporation and the officers duly authorized to take charge of the affairs thereof, the property and business of said corporation, and changed the locks on the offices and premises occupied by said company in the building known as 137 Montgomery street in the city and county of San Francisco, and permanently locked and closed said offices occupied and used by said corporation defendant and which constituted the principal and only place of business of said corporation defendant in said city and county."

On July 25, 1904, defendant duly served notice of motion to set aside the order appointing the receiver on the ground that the complaint does not state sufficient facts to constitute a cause of action, or entitle plaintiff to the relief prayed for or for the appointment of a receiver, and upon the further ground that there is no authority of law for the appointment of a receiver of defendant corporation upon the grounds stated in the complaint herein, and the court was without jurisdiction to appoint said receiver. The court shortened the time within which to serve notice of said motion to two hours and defendant duly served the same upon plaintiff on July 25th, and simultaneously therewith also served on plaintiff a copy of the answer to the complaint.

In its answer defendant denies specifically each and every of the allegations of the complaint and avers that plaintiff has caused assignments of said contracts to be made to him for the purpose of this action, but none of said assignments has or have been registered with defendant as required by said contracts and all like contracts; that not less than ninety-seven per cent of the contract holders who have assigned their contracts to plaintiff as by him alleged have not paid the full amount required by them to be paid under the terms of said contract, and "said contracts are not fully paid and have not matured with the exception of probably six"; that said contracts are payable only "when there shall be the full amount of one hundred dollars to the credit of said contract in the redemption fund of the company, and not before, as said contracts in express terms stipulate and provide"; that prior to the delivery or execution of said contracts, or any of them, each holder signed a written application of the form set out in the answer. This application purports to be an application in which the proposed purchaser agrees to make the payments as set forth in the contract under penalty of forfeiture, and declares that the application is made with full knowledge of all the provisions of said contract and published literature of the company, all of which terms and conditions the purchaser agrees to. The motion came on to be heard on the 25th and at the hearing thereof "there was used, heard and considered the said complaint herein, the said notice of motion to set aside said order and the said answer of defendant." The matter was taken under advisement, and "on July 27th the plaintiff served and filed in said cause the following papers and pleadings, to wit, notice, affidavits, order, motion to amend and amended complaint." These papers were filed by leave of court and over the defendant's objection, and thereupon the court, "upon the consideration of all the papers on file herein, including said amended complaint, denied said motion to vacate said order appointing said receiver herein, and by the order of said court duly entered in the minutes thereof continued said receiver in the use, occupation, possession and control of the property and premises of said corporation defendant, by the order of said court to such effect." The papers filed by plaintiff on the 27th of July, and which were heard upon defendant's motion, do not appear in the transcript.

On July 28th defendant duly served notice of appeal from said order appointing said receiver and upon the same day and upon application, the amount being fixed by the court, defendant filed its stay bond on appeal in the sum of $5,000, which was duly approved by the court, whereupon the court ordered "that all proceedings under said order appointing said receiver are hereby stayed," and further that said receiver surrender possession to defendant of all the property held by him under said order and to "desist from doing any further act as such receiver."

The order from which defendant appeals was made without notice to defendant, upon the verified complaint alone; the first notice defendant had of the order was when the receiver took possession of its books and other property and its place of business, locked up the premises and carried away the key. The bond given by plaintiff at the time was subsequently declared by the court to be so defective as to require another bond to be given in lieu thereof, which was not done until five days later. When the receiver took possession of defendant's place of business and its books, records and other property, his only authority was the *ex parte* order of the court concededly issued upon the original complaint, supported by a defective bond which, had it been in all respects good and sufficient, may have been wholly inadequate to damnify defendant for the damage in executing the order. But aside from any imperfection in the bond we know of no authority, statutory or otherwise, that warranted the court in making the order complained of. We regard the proceedings taken subsequent to the making of the order, when the motion to vacate it was noticed and heard, as wholly immaterial and in no wise affecting the question now before us. The validity of the order must be determined by the proceedings upon which it was based. We have set out these subsequent proceedings because they are part of the record and are claimed by respondent to have some bearing upon the question presented, but we fail to see in what respect they can be used to validate an order previously made by the court upon grounds then only in existence.

The facts stated in the complaint do not constitute a cause of action and are not claimed to have been stated for any purpose except for the appointment of a receiver. Respondent says in his brief that the action is not to enforce an il-

legal contract, but "is to distribute among creditors a joint fund." The action does not purport to have been brought on behalf of all the contract holders; there is no demand for an accounting for the common benefit of all contract holders or for the benefit of plaintiff; there are no appropriate averments for any relief, so far as we can discover by the complaint, except for the appointment of a receiver. True, the prayer asks for judgment for a certain sum, but the only averment looking toward a money judgment is the averment that defendant has received this amount upon the contracts mentioned, to the benefit of plaintiff, which, in itself, is not sufficient in an action for money had and received; there is no allegation of nonpayment of the money paid to the corporation. (*Hurley* v. *Ryan,* 119 Cal. 71, [51 Pac. 20] ; *Dodge* v. *Kimple,* 121 Cal. 580, [54 Pac. 94].) It is not possible to make anything out of the complaint except a recital of facts, all of them substantially upon information and belief or on belief alone, as ground for the appointment of a receiver.

It may be regarded as the settled law in this state that a court of equity has no inherent power to appoint a receiver of an insolvent corporation merely because of its insolvency, or to wind up its affairs, in the absence of a statutory provision. (*Murray* v. *Superior Court,* 129 Cal. 628, [62 Pac. 191].) Section 564, subdivision 5, Code of Civil Procedure, provides that "a receiver may be appointed . . . in the cases when a corporation . . . is insolvent." In the *French Bank Case,* 53 Cal. 495, 553, the court said: "There is, of course, no such thing as an action brought distinctively for the mere appointment of a receiver—such an appointment, when made, is ancillary to or in aid of the action brought. Its purpose is to preserve the property pending the litigation so that the relief awarded by the judgment, if any, may be effective. The authority conferred upon the court to make the appointment necessarily presupposes that an action is pending before it, instituted by some one authorized by law to commence it. But there is no statute of this state, none to which we have been pointed, which undertakes to confer upon a private person, either as stockholder or creditor, the right to maintain an action to dissolve a corporation upon the ground that it is insolvent, or to obtain relief by seizing its property out of the hands of its constituted management, and placing it in the hands of a receiver." This construc-

tion of the subdivision was followed and approved in *Fischer* v. *Superior Court,* 110 Cal. 129, [42 Pac. 561]. It was there said: ''The general rule, no doubt, is that so harsh a measure as the appointment of a receiver to take property out of one's possession without a trial will not be indulged in by a court without previous notice to the defendant. It would be unjustifiable, except where it clearly appeared that irreparable injury would be done during the few days necessary for a hearing on notice; and even in such an extreme case, a temporary injunction would usually be sufficient.''

Mr. Beach, in his work on Receivers, section 141, says: ''A motion to appoint a receiver will not be entertained unless notice has been given to the defendant, if practicable, and the appointment will not be made without notice, save in the case of irreparable injury.'' (See *Havemeyer* v. *Superior Court,* 84 Cal. 327, [18 Am. St. Rep. 192, 24 Pac. 121].)

Respondent claims that *Fischer* v. *Superior Court, supra,* turned on the point that a bond was not required before making the order. In this respondent is in error. The decision deals particularly with the fact that the order appointing the receiver was without notice to the adverse party, while also showing that the court was without authority to make the order to take possession of the property of the corporation, as held in the *French Bank Case, supra.*

We do not find it necessary to pass definitely upon the nature of these contracts. Both parties seem to regard them as illegal, and for this reason appellant contends that the law leaves plaintiff where it finds him (*Wyman* v. *Moore,* 103 Cal. 213, [37 Pac. 230]) ; and that a contract against public policy may not be made the foundation of any action, either at law or in equity. (*Chateau* v. *Singla,* 114 Cal. 91, [55 Am. St. Rep. 63, 45 Pac. 1015].) A very slight examination of the contract shows that there can never accumulate in the redemption fund the amount required before the company can be called upon, under the terms of the contract, to furnish the merchandise referred to. Apparently each contract stands on its own feet and the holder has no claim upon the redemption fund except to such money as he himself pays in. There appears to be no provision that forfeitures shall inure to the benefit of the redemption fund, but apparently they go to the benefit of the company. The holder has

a fully paid-up contract when he has paid $50, but of this amount only $29.75 goes to this redemption fund. The contract expressly provides that the merchandise will not be delivered until there is paid into that fund the full sum of $100, so that the holder must pay into that fund $70.25 additional, or in all $120.25, for the privilege of receiving $100 worth of merchandise at retail prices. A more perfect scheme of "heads I win and tails you lose" cannot well be conceived. Any person of ordinary understanding can see this by a moment's examination of the contract itself. It may be doubted whether equity will ever come to the relief of a sane person who deliberately, as in this case, without fraudulent inducement or concealment or through mistake or misrepresentation, becomes a party to such a contract. However this may be, we are convinced that the appointment of the receiver was without authority of law for the reasons hereinbefore stated. The order also contains a restraining clause, but no appeal is taken from that part of the order, if indeed it was intended to operate as an injunction or has been so treated.

So much of the order as appointed a receiver is reversed.

Hart, J., and Burnett, J., concurred.